IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN ALEXANDER,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>JEFFREY BEARD, et al.,<br>　　　　Defendants. | C.A. No. 14-258 Erie<br><br>Magistrate Judge Baxter |

# MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I.　INTRODUCTION

### A.　Relevant Procedural History

On October 14, 2014, Plaintiff John Alexander, an inmate currently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983. Named as Defendants are Jeffrey Beard, the former Secretary of the Pennsylvania Department of Corrections ("Beard"); Lt. Michael Tkacs ("Tkacs"); Lt. Hooper ("Hooper"); Correctional Officer ("CO") Woods ("Woods"); Capt. Trempus ("Trempus"); R. Mackey ("Mackey"); Superintendent Brian Coleman ("Coleman"); Deputy Eric Armel ("Armel"); Debra Hawkinberry CCPM ("Hawkinberry"); Major Scott Nickelson ("Nickelson"); Major Tammy Cesarino ("Cesarino"); Lt. Campbell ("Campbell"); "Cam II" Michael Smith ("Smith"); Major of the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. [ECF Nos. 7, 11].

1

Guard David Grainey ("Grainey"); and Unit Manager Carla Swartz ("Swartz").[2]

Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution while he was incarcerated at State Correctional Institution at Fayette ("SCI-Fayette") and State Correctional Institution at Greene ("SCI-Greene"). In particular, he claims that he was unlawfully confined to the Restricted Housing Unit ("RHU") for over 300 days, following an assault in January 2012 that he claims he did not commit. According to Plaintiff, he could not have been involved in the assault because he was on the phone when it took place. After a hearing on January 30, 2012, Plaintiff was initially sanctioned to 90 days Disciplinary Custody ("DC") in the RHU. Plaintiff claims that the misconduct was eventually vacated and remanded to permit recharging and rehearing. On April 27, 2012, the misconduct was dismissed upon rehearing. Plaintiff claims, however, that he was nevertheless transferred to SCI-Greene on July 26, 2012, where he was again placed in the RHU and told that, although his misconduct had been dismissed, additional time was needed to verify the dismissal. Then on November 8, 2012, Plaintiff claims that he was transferred to SCI-Forest, after having spent more than 300 days in the RHU. He claims that he wrote 50 request slips "begging [the Defendants] to check the cameras and all the evidence that would prove [his] innocence," but his "requests were ignored."

Plaintiff alleges that Defendants Tkacs, Hooper, Woods, and Trempus were in charge of investigating the assault that led to his placement in the RHU. Furthermore, he alleges that

---

[2] Defendants have filed a suggestion of death as to Hearing Examiner Mackey. [ECF No. 18]. Instead of moving to substitute Mackey's estate as a Defendant, Plaintiff requested that the Court substitute the present hearing examiner at SCI-Fayette pursuant to Fed. R. Civ. P. 25(d). [ECF No. 19]. That rule, however, only applies when a Defendant is named "in an official capacity[,]" Fed. R. Civ. P. 25(d), whereas Plaintiff is clearly attempting to hold these Defendants liable in their *personal* capacities. Indeed, these Defendants cannot be held liable for monetary damages in their official capacities. *See Will v. Michigan Dep't of State Pol.*, 491 U.S. 58, 71 (1989). In their Concise Statement of Material Facts, Defendants have also indicated that Lt. Hooper is now deceased. They have not, however, filed a formal suggestion of death as to him, despite having previously indicated that they would. [ECF No. 26 at 1 n.1].

2

Defendant Mackey violated due process by failing to allow him to call witnesses and ignoring certain pieces of evidence at his misconduct hearing, and "showed bad faith by letting his personal feelings get the best of him" at the first misconduct hearing. With regard to Defendants Coleman, Hawkinberry, Armel, Nickelson, and Cesarino, Plaintiff alleges that they were the staff members to whom he appealed "following the appeal process." Plaintiff also alleges that he "cried out for help in several request slips asking [these Defendants] to view the camera and check [his] phone so that they would see that [he] was on the phone at the time of the alleged attack." Finally, regarding Defendants Smith, Grainey, and Swartz, Plaintiff alleges that once he was transferred to SCI-Greene from SCI-Fayette, "these [D]efendants were all part of the unlawful confinement by keeping [him] in the RHU longer than [he] needed to be."

On July 23, 2015, Defendants file an Answer denying Plaintiff's allegations. On March 3, 2016, Defendants filed a Motion for Summary Judgment, along with a brief and concise statement of material facts ("CSMF") in support. [ECF Nos. 24-26]. Plaintiff was ordered to file a response on or before April 27, 2016. [ECF No. 23]. On April 15, 2016, Plaintiff filed a Motion for Extension of Time to file a response, which the Court granted. [ECF Nos. 28, 29]. On June 23, 2016, Plaintiff filed a second Motion for Extension of Time, seeking an additional 60 days within which to file a response. [ECF No. 30]. The Court granted this Motion, as well, thereby affording Plaintiff until August 15, 2016, to file a response. [ECF No. 31]. On August 18, 2016, Plaintiff filed a third Motion for Extension of Time, requesting another 60-day extension. [ECF No. 32]. Once again, the Court granted Plaintiff's Motion, providing him until September 15, 2016, to file a response but warning him that "[n]o further extension of time will be granted." [ECF No. 33].

Despite these three extensions, Plaintiff has still not filed a response to Defendants'

3

Motion or CSMF. "Consequently, in accordance with our Local Rules, all factual averments contained in the Defendants' CSMF will be deemed admitted for purposes of summary judgment." *Holman v. Hogue*, No. CIV.A. 11-1269, 2013 WL 941801, at *1 (W.D. Pa. Feb. 15, 2013) (citing *Enigh v. Miller*, Civil No. 08–1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010)).

### B. Relevant Factual History[3]

Plaintiff was incarcerated at SCI-Fayette during the first half of 2012. On January 9, 2012, at approximately 6:30 p.m., Lt. William Zosky was making rounds on B Unit when he noticed an inmate named Naples acting suspiciously and avoiding him in the yard. Eventually, the COs learned that Naples had been assaulted and took him for a medical assessment. At 6:42 p.m., yard was terminated and the unit was secured, while staff searched for evidence related to the assault, footage of which had not been captured by the yard's camera.

Defendant Trempus, who was then the head of security at SCI-Fayette, investigated the incident with his staff. Through several confidential informants ("CIs"), Defendant Trempus and his staff identified Plaintiff and another inmate, Timothy Gains, as the assailants. The CIs were positioned such that they could see the assault take place, and had provided reliable information in the past, which Defendant Mackey confirmed when he conducted *in camera* interviews with the CIs.

On January 12, 2012, Plaintiff and Gains were placed in Administrative Custody ("AC") status pending the completion of the investigation. Then on January 23, 2012, Defendant Hooper issued misconducts to Plaintiff and Gains. Following a hearing on January 30, 2012, Defendant Mackey found both Plaintiff and Gains guilty of the misconducts and sanctioned them to 90 days in Disciplinary Custody. Plaintiff was subsequently sanctioned 15 days for a different

---

[3] The facts recited herein have been drawn from Defendants' CSMF and Appendix and have not been disputed by Plaintiff.

misconduct, extending his DC time until April 25, 2012.

Plaintiff appealed his misconduct to the Program Review Committee ("PRC"), which upheld Defendant Mackey's decision. On April 23, 2012, however, the Office of Chief Hearing Examiner vacated Defendant Mackey's decision and remanded the case for recharge and rehearing. A second hearing was held on April 27, 2012, at which Defendant Mackey dismissed the misconduct "in light of evidence presented . . . that was not available . . . during the original misconduct hearing." The newly presented evidence was apparently verification that Plaintiff's pin number had been used to make a one-minute phone call at 6:42 p.m. on January 9, 2012.

By the time of the second hearing, Plaintiff had completed his DC time (it ended on April 10, 2012) and been moved to AC status pending transfer to another facility, which DOC staff believed was necessary to separate Plaintiff from Naples and Gains. These safety concerns led Defendants to keep Plaintiff in AC status until his transfer could be completed.

Plaintiff was transferred to SCI-Greene in late July 2012. After arriving at SCI-Greene, Plaintiff met with the PRC there to review his AC status and the circumstances surrounding the assault at SCI-Fayette. Initially, Lt. Armstrong of SCI-Greene advised the PRC that the SCI-Greene security office would support allowing Plaintiff to be placed in the general population if PRC voted to allow it. Shortly thereafter, though, the SCI-Greene security office learned that Plaintiff's father had contacted his counselor and said that Plaintiff's uncle was housed in the general population at SCI-Greene and might cause problems for Plaintiff if they encountered each other. Plaintiff confirmed that his father had conveyed this information to his counselor. As a result, the security office recommended a formal separation between Plaintiff and his uncle, which was eventually accomplished by transferring Plaintiff to SCI-Forest on November 8, 2012. In the meantime, Plaintiff was kept in AC status for his own safety and protection.

After Plaintiff was moved to AC status in April 2012, he was granted additional privileges, including a radio and extended commissary on May 3, 2012, that he was he was not afforded while on DC status. In July 2012, he became eligible for TV privileges, as well.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(C). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health Sys. v. Met. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving

6

elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247–249.

**B.**     *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read

7

"with a measure of tolerance"); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### III. DISCUSSION

#### A. Fourteenth Amendment Due Process Claim

Plaintiff alleges that he was denied due process in that he was housed in the RHU for more than 300 days after having been falsely accused of committing the assault on Naples. To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (1) the existence of a constitutionally protected liberty or property interest; and (2) constitutionally deficient procedures by the state in its deprivation of that interest. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571(1972). "For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "In deciding whether a protected liberty interest exists under Sandin, [the Court must] consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Id. (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). In applying these factors, the Third Circuit Court of Appeals has reached differing conclusions, "reflecting the fact-specific nature of the Sandin test." Mitchell, 318 F.3d at 532 (comparing, inter alia, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied

contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest) with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not implicate a liberty interest), and Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir. 1997) (transfer to administrative custody with strict limits on property, visitation and out-of-cell activities does not implicate inmate's due process rights)).

This case easily falls on one side of this divide. Plaintiff was placed in DC for 90 days, followed by 198 days on AC status, as a result of the misconduct and the need to separate him first from Naples and Gains and later his uncle while at SCI-Greene. There is no evidence that the conditions he faced while on DC or AC status amounted to an "atypical and significant hardship." Plaintiff merely alleges that he was "denied meaningful exercise, natural light, adequate time in a law library, daily use of phone, and everything else general population has to offer that the R.H.U. don't." He also claims that he was "denied job placement, promotional transfer, pay raise, contact visits, phone calls, general population commissary, television, radio, [and] smoking privileges[.]"[4] However, none of these alleged hardships amount to a "condition of confinement that was appreciably different from the conditions of other similarly situated inmates, nor do they indicate that Plaintiff's time in [disciplinary custody or] administrative custody constituted an atypical scenario comparable to that experienced by the plaintiff in Shoats." Cash v. Wetzel, No. CA 12-312, 2014 WL 4924865, at *6 (W.D. Pa. Sept. 30, 2014).

Because Plaintiff's confinement in the RHU did not impose an "atypical and significant hardship" under Sandin, he has not established that he was deprived of a protected liberty

---

[4] These allegations do not actually appear in Plaintiff's Complaint. They are set forth in a grievance Plaintiff filed in May 2012, which Defendants have attached as Exhibit 10 in their Appendix in support of their CSMF. [ECF No. 27-1 at 51].

9

interest. Accordingly, summary judgment will be entered in Defendants' favor on Plaintiff's due process claim.

**B.     Eighth Amendment Conditions of Confinement Claim**

Although Plaintiff alleges in his Complaint that his Eighth Amendment rights were violated, he has not specified precisely what conduct he believes amounted to a deprivation of those rights. Presumably, though, he is claiming that the conditions of his confinement in the RHU (e.g., the lack of exercise, the lack of natural light, the allegedly "inadequate" access to the library, and the limited use of the phone), in and of themselves, ran afoul of the Constitution.

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The failure to provided inmates with humane conditions of confinement can in some cases amount to cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted).

To prevail on a conditions-of-confinement claim, a plaintiff must prove two elements. Id. First, "the deprivation alleged must be, objectively, 'sufficiently serious[.]'" Id. at 834. As the Supreme Court has explained, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 (1981)). Prison officials must, therefore, ensure that inmates have access to adequate food, clothing, shelter, warmth, medical care, and exercise. See Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 298. "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical activities such as plumbing, ventilation and showers." Nami v.

Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990)). Second, the defendant "must have a 'sufficiently culpable state of mind,'" which in this context means "deliberate indifference." Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297). A person acts with "deliberate indifference" if he "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837. This is a purely subjective standard, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers–Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Here, Plaintiff has not alleged, let alone brought forward evidence, that he was denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." Griffin, 112 F.3d at 709. As already noted, he seems to be generally complaining about the conditions of confinement that confront all inmates in restricted housing in Pennsylvania's correctional institutions. However, "the federal and state Pennsylvania courts unanimously have found that the harsh conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, including the most restrictive LTSU, without more, do[] not violate the Eighth Amendment." Norris v. Davis, No. CIV.A. 10-1118, 2011 WL 1627340, at *6 (W.D. Pa. Apr. 28, 2011) (citing Griffin, 112 F.3d 703; Pressley v. Johnson, 268 Fed. App'x 181, 183 (3d Cir. 2008); Walker v. Campbell, Civ. No. 09–282, 2010 WL 2891488 (W.D. Pa. May 4, 2010); Fortson v. Kelchner, Civ. No. 08–532, 2009 WL 693247, at *3 (W.D. Pa. Mar. 13, 2009); Milhouse v. Arbasak, Civ. No. 07–01442, 2009 WL 1119488, 3 (E.D. Pa. April 27, 2009); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W.D. Pa. 2008); Dantzler v. Beard, Civ. No. 05–1727, 2007 WL 5018184, at *11–12 (W.D. Pa. Dec. 6, 2007); Banks v. Beard, Civ. No. 03–659, 2006 WL 2192015, at *11 (W.D. Pa. Aug.1, 2006)). Since Plaintiff has failed to raise a

11

genuine issue of material fact as to whether the conditions of his confinement in the RHU constituted cruel and unusual punishment, Defendant's Motion for Summary Judgment will be granted as to this claim.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is granted and judgment will be entered in favor of Defendants and against Plaintiff on all claims.

An appropriate Order follows.


                                                    S/Susan Paradise Baxter
                                                    SUSAN PARADISE BAXTER
                                                    United States Magistrate Judge

Date: November 1, 2016